**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION**

NO: 2:07-CV-53-BR

| | | |
|---|---|---|
| SHARON ASKEW | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Memorandum &** |
| | ) | **Recommendation** |
| | ) | |
| METHODIST HOME FOR CHILDREN | ) | |
| | ) | |
| Defendant. | ) | |

This Cause comes before the Court on Defendant's Motion for Summary Judgment **[DE-19]** and Motion to Strike **[DE-29]**. With regards to the Motion for Summary Judgment, Plaintiff has filed a response in opposition to the motion **[DE-26]**, Defendant has filed a reply **[DE-27]** and Plaintiff has filed a sur-reply **[DE-28]**. In addition, Plaintiff has also filed a response in opposition to Defendant's motion to strike **[DE-31]**. These motions are now ripe for disposition. . Pursuant to 28 U.S.C. § 636(b)(1), this matter is before the undersigned for the entry of a memorandum and recommendation.

**I.    STATEMENT OF THE CASE**

Defendant provides various services and programs to local communities across the

1

State of North Carolina.  **[Scarborough Aff. at ¶ 3]**.  Specifically, Defendant operates a multi-purpose juvenile home in Hertford County, North Carolina ("Hertford Home"), which is staffed by a Program Manager, a teacher, six resident counselors, two overnight awake staff, and one family specialist. **[Scarborough Aff. at ¶ 5]**.  Plaintiff was hired in March 2004 by Raymond Moore, the interim Program Manager, and another hiring manager, to work as a teacher at Hertford Home. **[Scarborough Aff. at ¶ 6]**.  Her employment lasted from March 2004 to June 2005. **[DE-5, p. 2]**.  At the beginning of employment, Defendant distributes its Employee Handbook to all of its employees. **[Scarborough Aff. at ¶ 4]**.  The handbook contains important information about Defendant, including a description of the agency's sexual harassment policy. **[Scarborough Aff. at ¶ 4]**.  The policy states in part:

> If an employee feels that sexual or other harassment is occurring, the employee may bring complaints to the attention of his or her supervisor or appropriate Vice President.
> There will be no reprisals against persons who file complaints of sexual or other harassment.  Allegations will be promptly investigated. Based on such investigation, action will be taken, as appropriate or justified, up to and including termination.
> All employees receive sexual harassment training as part of Employee Orientation training during their first quarter of employment.
> [Defendant]'s grievance process is also available for harassment complaints.

**[Ex. A. DE-22-2, pgs. 2-3]**.

After Plaintiff was hired, she received a copy of the Defendant's Employee Handbook, and acknowledged her receipt in a signed document. **[Ex. B; DE-20-3]**.  By signing the document, Plaintiff affirmed that she was responsible for reading and understanding the policies in the handbook, and addressing any questions she had to her

2

supervisors. **[Ex. B; DE-20-3]**. During her deposition, Plaintiff testified that she was "pretty sure [she] received the handbook." **[Ex. A, DE-20-2 at p. 57, l. 13]**. When asked whether she understood that she could report sexual harassment to the vice president of the agency, Plaintiff responded "I knew that I could report sexual harassment to – anyone. Vice president, no, I didn't recall that in particular, but I'm sure that I could report that to anyone. . . ." **[Ex. A, DE-20-2 at p. 56, ll. 7-14]**. In addition, when prompted again about the option of reporting sexual harassment, Plaintiff stated, "[t]hat would be quite obvious without a handbook, yes." **[Ex. A, DE-20-2 at p. 58, ll. 15-19]**.

Defendant has standard requirements that must be met by all employees that work as teachers. **[Scarborough Aff. ¶ 7]**. Specifically, teachers must work at least forty (40) hours per week (including six hours in the classroom per day) and are required to have a teacher's certification from the State of North Carolina. **[Scarborough Aff. ¶ 7]**. If a teacher does not have his/her certification, the teacher must submit a written plan that describes how they will obtain their certification while meeting the teaching requirement of the job. **[Scarborough Aff. ¶ 7]**. This written plan is first submitted to the Program Manager, who then submits it for management review and approval. **[Scarborough Aff. ¶ 7]**. Officials authorized to approve the plan include Jim Pronko, the Coordinator of Juvenile Home Services, and Ellen Scarborough, the Director of Residential Services. **[Scarborough Aff. ¶ 7]**.

As of May 2005, Plaintiff had not yet received her teaching certification. **[Scarborough Aff. ¶ 8]**. As a result, Jim Pronko instructed Plaintiff's supervisor, Raymond

Moore, to direct Plaintiff to submit a written work plan that would provide for sufficient teaching time, while allowing her to obtain her certification. **[Scarborough Aff. ¶ 8]**. In late May 2005, Plaintiff submitted her proposed plan to Mr. Moore. **[Scarborough Aff. ¶ 9].** Mr. Moore then forwarded the plan to Mr. Pronko at Defendant's Raleigh headquarters, who reviewed it with his supervisor, Ms. Scarborough. **[Scarborough Aff. ¶ 9]**. According to Plaintiff's plan, she would attend classes in the morning from 8:00 a.m. until 11:00 a.m., then arrive at Hertford Home around noon, and then leave for the day around 3:00 or 4:00 p.m. **[Scarborough Aff. ¶ 9]**. Mr. Pronko and Ms. Scarborough rejected the plan because it did not provide for sufficient teaching time for the students, and Plaintiff would not be working a 40-hour work week. **[Scarborough Aff. ¶ 9]**. They requested that Plaintiff come to Defendant's Raleigh headquarters to meet with them to discuss workable alternatives. **[Scarborough Aff. ¶ 9].**

On June 6, 2005, Mr. Pronko, Ms. Scarborough, Mr. Moore, and Plaintiff met in Defendant's Raleigh office. **[Scarborough Aff. ¶ 10]**. During the meeting, Mr. Pronko and Ms. Scarborough offered Plaintiff three different options for her to finish the classes that she needed for certification. **[Scarborough Aff. ¶ 10]**. They also told her that if none of their options were agreeable to her, then they would allow her to submit another plan. **[Scarborough Aff. ¶ 10]**. The first option allowed Plaintiff to attend her classes on a daily basis and then come in and work from 12 p.m. to 8 p.m. **[Scarborough Aff. ¶ 10]**. A second option allowed Plaintiff to attend classes, and then come in for 32 hours per week, but Plaintiff would be required to use one vacation day per week and spend 2 hours per week

4

doing lesson plans at her house. **[Scarborough Aff. ¶ 10]**. Under the third option, Plaintiff would take 2 classes to obtain her certification by July 2005, but would use two vacation days per week to make up for time missed at work. **[Scarborough Aff. ¶ 10]**. At the end of their meeting, Mr. Pronto and Ms. Scarborough asked Plaintiff to inform them of which option she preferred, and if she did not prefer any of the options, provide them with an alternative plan. **[Scarborough Aff. ¶ 10]**. Plaintiff signed a letter that summarized the aforementioned details of the meeting. **[Scarborough Aff. ¶ 10]**; **[Ex. B, DE-22-3]**.

Plaintiff mailed a letter, dated June 7, 2005, that rejected all three options that Mr. Pronto and Ms. Scarborough had discussed. **[Scarborough Aff. ¶ 11]; [Ex. C, DE-22-4]**. Instead, she proposed that she schedule and attend field trips and other academic activities, to make up the time she would miss while she attended her classes. **[Scarborough Aff. ¶ 11]; [Ex. C, DE-22-4]**. Mr. Pronko and Ms. Scarborough discussed Plaintiff's proposal and concluded that it was an unacceptable alternative to their three options. **[Scarborough Aff. ¶ 11]**. To that end, on June 9, 2005, Ms. Scarborough sent a letter directly to Plaintiff's home, informing her that her proposal was not approved. **[Scarborough Aff. ¶ 11]; [Ex. D, 22-5]**. Instead, Ms. Scarborough offered Plaintiff another year to obtain her certification, provided that she select one of the three options that were discussed during their June 6th meeting. **[Scarborough Aff. ¶ 11];[Ex. D, 22-5]**. Ms. Scarborough also requested that Plaintiff provide a clear description of her curriculum and timelines to verify that the chosen option would meet the requirements of her job. **[Scarborough Aff. ¶ 11]; [Ex. D, 22-5, p.2]**.

5

Furthermore, Ms. Scarborough also notified Plaintiff that "[i]f one of those options does not work for you, we understand if you decide that this position is not for you." **[Ex. D**, **22-5, p.2]**. Finally, Ms. Scarborough concluded the letter by requesting that Plaintiff inform her of her decision by June 15, 2005. **[Scarborough Aff. ¶ 11]**; **[Ex. D**, **22-5, p.2]**.

Neither Mr. Pronto nor Ms. Scarborough ever received a verbal or written response from Plaintiff identifying which, if any, of the options she would be selecting. **[Scarborough Aff. ¶ 14]**. Plaintiff's employment was terminated because of her failure to respond to Ms. Scarborough's June 9th letter. **[Scarborough Aff. ¶ 14]**. Before making that decision, Ms. Scarborough consulted with Mr. Pronko and Jim Sanders, Vice President of Program Services. **[Scarborough Aff. ¶ 14]**. Ms. Scarborough reports directly to Mr. Sanders – Mr. Sanders agreed with her decision. **[Scarborough Aff. ¶ 14]**.

Plaintiff's supervisor, Mr. Moore, was not consulted about Defendant's decision to terminate Plaintiff's employment, nor was he asked to express his opinion about the matter. **[Scarborough Aff. ¶ 14]**. Rather, Mr. Moore was informed about the decision to terminate Plaintiff only after the fact. **[Scarborough Aff. ¶ 14]**. However, because Defendant's standard procedure is for the direct supervisor to write a letter terminating employment, Ms. Scarborough requested that Mr. Moore draft Plaintiff's termination letter. **[Scarborough Aff. ¶ 14]**. Ms. Scarborough approved Mr. Moore's draft, and it was sent to Plaintiff. **[Scarborough Aff. ¶ 14]**; **[Ex. E, DE-22-6]**. The letter explicitly stated that Plaintiff's employment as a teacher with Hertford Home was being terminated, effective June 23, 2005,

6

"for failure to meet the requirements of the work schedule." **[Ex. E, DE-22-6]**.

After Defendant terminated Plaintiff's employment, she filed a claim with the Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment by Mr. Moore. **[DE-5, p. 6]**. She asserted that from August 2004, until the end of her employment, Mr. Moore had engaged in inappropriate conduct toward her, which included touching, grabbing, and making sexually suggestive comments. **[DE-26, p. 1]**. However, when the harassment was taking place, Plaintiff only discussed it with her co-workers. **[DE-26, p.2 ]; [Plaintiff's Affidavit, at 3]**. She never utilized the reporting procedures that were outlined in Defendant's Employee Handbook. **[Scarborough Aff. ¶ 16]; [Tr. at 161, ll. 18]**. The EEOC issued a right to sue letter to Plaintiff on August 31, 2007. **[DE 1-2]**. On January 2, 2008, Plaintiff filed a complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq*. alleging employment discrimination. **[DE-5]**. Specifically, Plaintiff contends in her complaint that the Defendant engaged in sexual harassment and improperly terminated her employment after she rejected Mr. Moore's sexual advances. **[DE-5]**.

## II. ANALYSIS

### A. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted:
> against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Celotex Corporation v. Catrett, 477 U.S.317, 322-323 (1986)

"[S]ummary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 317; Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Specifically, the moving party bears the burden of identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" that the moving party believes demonstrate an absence of any genuine issues of material fact. Celotex, 477 U.S. at 323. Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue which requires trial. Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). As a general rule, the non-movant must respond to a motion for summary judgment with affidavits, or other verified evidence, rather than relying on his complaint or other pleadings. Celotex, 477 U.S. at 324. See also, Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

In the summary judgment determination, the facts and all reasonable inferences must be viewed in the light most favorable to the non-movant. Anderson, 477 U.S. at 255. It is well-established that any analysis of the propriety of summary judgment must focus on both the materiality and genuineness of the fact issues. Ross, 759 F.2d at 364. The mere existence of some alleged factual dispute between the parties will not defeat a motion for

8

Case 2:07-cv-00053-BR   Document 32   Filed 02/11/09   Page 8 of 17

summary judgment.  Anderson, 477 U.S. at 247-48.  A fact is material only when its resolution affects the outcome of the case.  Id. at 248.  A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.

**B.     Title VII Claims**

   **1.     Sexual Harassment/Hostile Work Environment**

To establish a prima facie case for hostile work environment, a plaintiff must prove the existence of four factors: (1) unwelcome conduct; (2) based on her sex; (3) sufficiently severe or pervasive to alter the conditions of employment thereby creating a hostile work environment; and (4) some basis for imputing liability to the employer.  Mativia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 266 (4th Cir. 2001).  With regards to the fourth element, the Supreme Court has established an affirmative defense for employers.  See Faragher v. City of Boca Raton, 524 U.S. 775 (1998); Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).  Specifically, "an employer [can] avoid strict liability for a supervisor's sexual harassment of an employee if no tangible employment action was taken against the employee."  Mativia, 259 F.3d at 266.  However, employers are only entitled to raise this affirmative defense if they can prove: "(a) that [they] exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee reasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." Id. at 266-67 (quoting Faragher, U.S. at 807; Burlington Indus., 524 U.S. at 765).  For purposes of the summary judgment determination,

9

Defendant has conceded the first three elements of the four-part test. **[DE-20, pgs. 10-11]**. However, they contend that based on the evidence, they are entitled to assert the affirmative defense. The Court will address the factors for the affirmative defense below.

### a.     Tangible Employment Action

Tangible employment action can encompass a discharge, demotion, or undersirable reassignment. Burlington Indus., 524 U.S. at 765. Plaintiff argues that Mr. Moore took tangible action against because she was fired "in retaliation of her not accepting his sexual proposals." **[DE-26, p. 2]**. However, while discharge is the "quintessential 'tangible employment action'", there is no evidence in the record that Plaintiff's "'termination resulted from a refusal to submit to [her] supervisor's sexual demands.'" Watkins v. Professional Sec. Bureau, Ltd., 201 F.3d 439, No. 98-2555, 1999 U.S. App. LEXIS 29841, *3 (4th Cir. Nov. 15, 1999) (quoting Burlington Indus., 524 U.S. at 753).

On the contrary, it was Mr. Moore's supervisors that ultimately decided to discontinue Plaintiff's employment after she failed to respond to requests to submit an acceptable work plan. **[Scarborough Aff. ¶¶ 14, 15]**. In addition, although Mr. Moore sent Plaintiff's letter of termination, he was not informed of his supervisors' decision until after it had been made, and he was never consulted or asked to give his opinion about the matter. **[Scarborough Aff. ¶ 14]**. Thus, he did not "possess[] [any] authority to be viewed as the one principally responsible for [Plaintiff's termination] or the actual decisionmaker for [Defendant]." Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 291 (4th Cir. 2004). Therefore, the Court concludes that Defendant did not take tangible employment action against Plaintiff.

Accordingly, Defendant is entitled to raise the affirmative defense against Plaintiff's hostile work environment claim.

### b. Prevention and Correction of Improper Behavior

To establish the first element of the affirmative defense, the employer must have "exercised reasonable care to prevent and correct promptly any sexually harassing behavior." Mativia, 259 F.3d at 266-67. The Fourth Circuit has recognized that "dissemination of an effective anti-harassment policy provides compelling proof that an employer has exercised reasonable care to prevent and correct sexual harassment." Id. (internal quotations omitted); see also, Barrett v. Applied Radiant Energy Corp., 240 F.3d 262, 266 (4th Cir. 2001) (adopting the holding from the Seventh Circuit, which concluded that "a company's distribution of an anti-harassment policy and the availability of higher management to receive complaints satisfies the first prong of the affirmative defense"). However, if there is evidence that the employer "implemented the policy in bad faith or was deficient in enforcing the policy [it] will rebut this proof." Mativia, 259 F.3d at 268.

Defendant's sexual harassment policy was disseminated to Plaintiff, through the Employee Handbook, at the beginning of her employment. **[Scarborough Aff. ¶ 4];[Tr. at 47, ll. 9-24].** During her deposition, Plaintiff acknowledged that she had signed a document that stated that she received the handbook.**[Ex. B; DE-20-3]**. The policy describes examples of sexual harassment, the procedure for reporting any complaints, and mandates that all employees receive sexual harassment training as part of their orientation during the first quarter of employment. **[Ex. A, DE-22-2, pgs. 2-3];[Tr. at 48, ll. 22-24].** In addition to the

11

harassment policy, Defendant also sends out auditors to its group homes on a periodic basis. **[Scarborough Aff. ¶¶ 14, 15]**. These auditors interview employees and ask questions about abuse, harassment, and other matters. **[Scarborough Aff. ¶¶ 14, 15]**.

Thus, there is no evidence that Defendant implemented its sexual harassment policies in bad faith or that Defendant was deficient in enforcing those policies. Mativia, 259 F.3d at 268; See also, **[Williford Aff., at ¶ 8]**. Therefore, the Court concludes that Defendant exercised reasonable care to prevent and correct sexually harassing behavior.

### c. Failure to Take Advantage of Preventative or Corrective Opportunities

The Fourth Circuit has held that "'evidence that the plaintiff failed to utilize the company's complaint procedure [for sexual harassment claims] will normally suffice to satisfy [the company's] burden under the second element of the [affirmative] defense.'" Mativia, 259 F.3d at 269 (quoting Barrett, 240 F.3d at 267 (internal quotation marks omitted)). Title VII's prohibition against sexual harassment would be useless if employees consistently failed to report improper conduct to their company officials. Mativia, 259 F.3d at 269. In fact, the failure to report this behavior could have a systemic negative effect; the harasser's conduct would continue unabated, and other employees that were aware of the conduct might wrongly assume that it was acceptable in the workplace. Id.

It is undisputed that Plaintiff was aware that she could report Mr. Moore's alleged improper conduct. See **[Tr. at 56, ll. 4-6]** ("Of course, I know that sexual harassment is something that shouldn't be done, that's wrong, and you – you can report it, yes."); **[Tr. at**

12

**56, ll. 10-11]** ("I knew that I could report sexual harassment to – to anyone."); **[Tr. at 158, l.18]** ("Of course I knew I could report [Mr. Moore]"). However, she now argues that she was reluctant to utilize Defendant's reporting procedures for three reasons. **[DE-26, p. 2]**.

First, she contends that based on conversations with her co-workers, she "strongly" felt that she should not report Mr. Moore because it might cause her termination. **[DE-26, p. 2]**. The Fourth Circuit has acknowledged that discussing sexual harassment with company supervisors can be difficult for the harassed employee. Barrett, 240 F.3d at 268. Despite this difficulty, the Court has "refused to recognize a nebulous 'fear of retaliation' as a basis for remaining silent." Id. at 267. Instead, if such retaliation does occur, Title VII provides a remedy for this type of treatment. Id. Thus, this argument is unpersuasive.

Plaintiff's second argument against reporting Mr. Moore, was that she did not believe he would be punished for his behavior.**[DE-26, p. 2]**. This argument is equally unpersuasive. "'The law against sexual harassment is not self-enforcing and an employer cannot be expected to correct harassment unless the employee makes a concerted effort to inform the employer that a problem exists.'" Barrett, 240 F.3d at 268 (quoting Shaw v. AutoZone, Inc., 180 F.3d 806, 813 (7th Cir. 1999)). As a result, "[a]n employee's subjective belief in the futility of reporting a harasser's behavior is not a reasonable basis for failing to take advantage of any corrective opportunities provided by the employer." Barrett, 240 F.3d at 268.

Plaintiff's final argument against reporting is that "[t]he typical response for one in [her] position is to put up with the behavior and avoid the harasser as much as possible."

**[DE-26, p. 2]**. This type of reasoning is contrary to both the purpose and the spirit behind sexual harassment law. Barrett, 240 F.3d at 267. Sexual harassment law "is specifically designed to encourage harassed employees to turn in their harasser because doing so inures to everyone's benefit." Id. For example, reporting the harasser benefits the victim because their employer can then take measures to stop future harassment. Id. It benefits other employees who might have been harassed by the same individual, or felt uncomfortable with observing such behavior. Id. Finally, it benefits the employer "by alerting it to the disruptive and unlawful misconduct of an employee." Id. Thus, the reporting requirement is the linchpin of sexual harassment law because it "serves the 'primary objective' of Title VII which 'is not to provide redress but to avoid harm.'" Id. (quoting Faragher, 524 U.S. at 806). Therefore, the undersigned finds that Plaintiff employee failed to take advantage of the preventative or corrective opportunities provided by the Defendant.

**d.    Conclusion**

Based on the above findings, the undersigned concludes that Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim.

**2.    Retaliatory Discharge**

Defendant has also moved for summary judgment on Plaintiff's retaliatory discharge claim. **[DE-20, pgs. 18-20]**. Traditionally, to establish a claim for retaliatory discharge under Title VII, a plaintiff must prove that: (1) she engaged in protected activity, (2) the employer took an adverse employment action against her; and (3) a causal connection existed

14

between the protected activity and the asserted adverse action. Von Gunten v. Maryland, 243 F.3d 858, 863 (4th Cir. 2001). However, the Supreme Court has recently broadened the formulation of the second element. Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 68 (2006). Specifically, instead of demonstrating an "adverse employment action" a "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. (internal quotation marks omitted).

It is undisputed that Plaintiff engaged in a protected activity by filing an EEOC complaint. See Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998) (noting that engaging in a protected activity can encompass filing an EEO complaint). Likewise, a reasonable employee would have found Defendant's discharge to be materially adverse. Thus, Plaintiff has satisfied the first two elements of her retaliatory discharge claim. However, Plaintiff failed to satisfy the third element of her claim. Specifically, Plaintiff did not file her EEOC complaint until after Defendant had already terminated her employment. **[DE-26, p. 6]**.

> To satisfy the third element, the employer must have taken the adverse employment action *because* the plaintiff engaged in protected activity. Since by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case.

Dowe v. Total Action Against Poverty, 145 F.3d 653, 657 (4th Cir. 1997) (emphasis in original), *overruled in part on other grounds by*, Hooper v. North Carolina, No. 1:04CV0014, 2006 U.S. Dist. LEXIS 72268 (M.D.N.C. Oct. 3, 2006) (unpublished decision).

Therefore, the Court concludes that Plaintiff has failed to establish a prima facie case for her

15

retaliatory discharge claim.

Accordingly, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

**B.     Motion to Strike**

On October 30, 2008, Defendant filed its Motion for Summary Judgment. **[DE-19]**. On December 2, 2008, Plaintiff filed a Memorandum in Opposition to Defendant's motion. **[DE-26]**. On December 15, 2008, Defendant filed its Reply Memorandum in support of its Motion for Summary Judgment. **[DE-27]**. On January 5, 2009, Plaintiff filed a Reply Memorandum in Opposition to Defendant's Reply Memorandum. **[DE-28]**. Defendant now moves to strike Plaintiff's Reply Memorandum **[DE-28]**, on the grounds that the Local Rules do not allow parties to file "sur-replies" without the permission of the Court. **[DE-29]**. Based on the above determinations, it is RECOMMENDED that this request be DENIED as MOOT.

**III.    CONCLUSION**

For the reasons stated above, it is RECOMMENDED that Defendant's Motion for Summary Judgment **[DE-19]** be GRANTED and its Motion to Strike **[DE-28]** be DENIED as MOOT.

SO RECOMMENDED in Chambers at Raleigh, North Carolina this 10th day of February, 2009.

_____
William A. Webb
U.S. Magistrate Judge